UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CEF FUNDING, L.L.C.**                                   **CIVIL ACTION**

**VERSUS**                                                **No. 09-6623**

**SHER GARNER CAHILL RICHTER**                            **SECTION I/1**
**KLEIN & HILBERT, L.L.C.**

### ORDER AND REASONS

Before the Court is a motion[1] *in limine* filed on behalf of plaintiff, CEF Funding, L.L.C. ("CEF"), to exclude the expert testimony of defendant's expert, Dane S. Ciolino ("Ciolino"). Defendant, Sher Garner Cahill Richter Klein & Hilbert, L.L.C. ("Sher Garner"), opposes[2] the motion. For the following reasons, plaintiff's motion *in limine* is **GRANTED**.

### *BACKGROUND*

CEF filed this lawsuit on October 1, 2009, claiming that Sher Garner breached certain legal obligations created by Louisiana's Rules of Professional Responsibility.[3] CEF claims that Sher Garner owed a duty to CEF to retain possession and safeguard settlement proceeds paid to Sher Garner's former clients in *Quintessa Huey, et al. v. Super Fresh/ Sav-a-Center*, et al., No. 07-cv-01169 (E.D. La. filed Mar. 3, 2007) (the "*Huey* case").[4] According to CEF, Sher Garner was aware of CEF's mortgage lien and security interests in such settlement proceeds as CEF was

---

[1] R. Doc. No. 102.
[2] R. Doc. No. 117.
[3] R. Doc. No. 1, p. 5.
[4] The defendant in the above-captioned case, Sher Garner, previously represented the plaintiffs in the *Huey* case. Sher Garner no longer serves as counsel for the *Huey* plaintiffs. The *Huey* case has since been adjudicated by this Court and it is pending before the U.S. Fifth Circuit Court of Appeals.

1

designated as a loss payee on the insurance policies.[5] CEF claims that Sher Garner disbursed the settlement proceeds without CEF's consent.[6]

CEF has filed a motion to exclude the proposed testimony of Ciolino, defendant's legal expert. CEF argues that Ciolino's opinions will not assist the trier of fact in understanding the evidence or determining a fact in issue at trial.

## LAW AND ANALYSIS

### I. STANDARD OF LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469, 480 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v.*

---
[5] R. Doc. No. 1, p. 4.
[6] *Id.* at pp. 4-5.

*Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238, 249-50 (1999).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584.  The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (citing *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. at 1176, 143 L.Ed.2d at 253)).  "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998).  To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology.  Rather, some objective, independent validation of the expert's methodology is required. *Id.*  Nonetheless, as Judge Vance stated in *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3 (E.D. La. October 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the
> traditional adversary system and the place of the jury within the

> system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to " 'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.' " *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

## II.   ANALYSIS

CEF seeks to exclude the proposed testimony of Ciolino on the ground that Ciolino's testimony would not assist the trier of fact to understand the evidence or to determine a fact in

4

issue as required by Rule 702. Sher Garner argues that Ciolino's opinion is admissible to assist the trier of fact in understanding the applicable standard of care.

In his expert report, Ciolino concludes that "the standard of care did not require Sher Garner lawyers to deliver the $3.35 million dollars in settlement proceeds obtained on behalf of its clients, [the Huey & Fong Trust and The Kenneth Huey Family Trust (the "Trusts")], to nonclient CEF…because CEF had no 'interest' in the funds sufficient to trigger the notification and delivery obligations set forth in Louisiana Rule 1.15(d)."[7] Ciolino's conclusion is premised on his earlier opinion that:

> CEF had no "written agreement by the client or the lawyer on behalf of the client guaranteeing payment out of those funds or property." CEF had obtained no promise in writing from the Trusts or from Sher Garner guaranteeing that settlement proceeds held in the [First Bank and Trust] account would be paid to CEF. Quite to the contrary, the last written agreement between the Trusts and CEF addressing the disposition of settlement funds provided just the opposite, namely, that settlement funds received by the Trusts would *not* "be paid directly to Lender."[8]

In its order denying defendant's motion for summary judgment, the Court previously found, as matters of law, that the striking of the provision in the Second Loan Modification and Forbearance Agreement did not strip CEF of its entitlement to the settlement proceeds and that CEF had an "interest" as defined in Rule 1.15(d).[9] Therefore, since the Court has already resolved these issues, Ciolino's proposed testimony would not assist the trier of fact to

---

[7] R. Doc. No. 102-2, p.10.
[8] *Id.*
[9] Rule 1.15(d) states in pertinent part:
> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. For purposes of this rule, the third person's interest shall be one of which the lawyer has actual knowledge, and shall be limited to a statutory lien or privilege, a final judgment addressing disposition of those funds or property, or a written agreement by the client or the lawyer on behalf of the client guaranteeing payment out of those funds or property.

5

understand the evidence or to determine a fact in issue.  Accordingly, Ciolino's proposed testimony is excluded.

For the foregoing reasons,

**IT IS ORDERED** that plaintiff's motion[10] *in limine* is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's motion[11] *in limine* is **GRANTED**.

New Orleans, Louisiana, April 7, 2011.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[10] R. Doc No. 102.

[11] R. Doc. No. 106.  In its opposition, CEF does not disagree that should Ciolino be excluded, its expert, Leslie Schiff, should also be excluded. *See* R. Doc. No. 121.