UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CEF FUNDING, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-6623** |
| **SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.** | **SECTION I/1** |

### ORDER AND REASONS

Before the Court is a motion[1] for summary judgment filed by defendant, Sher Garner Cahill Richter Klein & Hilbert, L.L.C. ("Sher Garner"). Plaintiff, CEF Funding, L.L.C. ("CEF"), opposes[2] the motion. In addition, plaintiff has filed motions[3] for partial summary judgment addressing similar issues. Defendant opposes[4] the motions.

For the following reasons, defendant's motion for summary judgment is **DENIED**. Further, plaintiff's motions for partial summary judgment with respect to the second forbearance agreement and potential conversion and *respondeat superior* liability are **GRANTED**. Additionally, plaintiff's motion for partial summary judgment with respect to plaintiff's claim to, and defendants' knowledge, possession and disbursement of, the settlement proceeds is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] R. Doc. No. 101.
[2] R. Doc. No. 52.
[3] R. Doc. Nos. 104, 107, 109.
[4] R. Doc. Nos. 118, 119, 120.

1

*BACKGROUND*

CEF filed this lawsuit on October 1, 2009, claiming that Sher Garner breached certain legal obligations created by Louisiana's Rules of Professional Responsibility.[5] CEF claims that Sher Garner owed a duty to CEF to retain possession and safeguard settlement proceeds paid to Sher Garner's former clients in *Quintessa Huey, et al. v. Super Fresh/ Sav-a-Center*, *et al.*, No. 07-cv-01169 (E.D. La. filed Mar. 3, 2007) (the "*Huey* case").[6] According to CEF, Sher Garner was aware of CEF's mortgage lien and security interests in such settlement proceeds as CEF was designated as a loss payee on the insurance policies.[7] CEF claims that Sher Garner disbursed the settlement proceeds without CEF's consent.[8]

Sher Garner has filed a motion for summary judgment asserting three grounds for dismissal of CEF's cause of action: (1) Sher Garner, a law firm, cannot be liable for a violation of Louisiana Rule of Professional Conduct 1.15(d) or (e); (2) CEF does not possess a third-party interest protected by Rule 1.15; and (3) CEF waived its interest when it signed the Second Loan Modification and Forbearance Agreement ("Second Forbearance").

In response, CEF has moved for partial summary judgment on several issues: (1) CEF claims that Sher Garner can be found liable for a violation of Rule 1.15(e) under a theory of *respondeat superior*; (2) CEF argues that its interest in the settlement proceeds is protected by Rule 1.15; and (3) CEF maintains that it did not waive its rights to any insurance proceeds received after the execution of the Second Forbearance. Further, CEF seeks a determination that as a matter of law: (1) CEF had a claim to the settlement proceeds; (2) Sher Garner had

---

[5] R. Doc. No. 1, p. 5.
[6] The defendant in the above-captioned case, Sher Garner, previously represented the plaintiffs in the *Huey* case. Sher Garner no longer serves as counsel for the *Huey* plaintiffs. The *Huey* case has since been adjudicated by this Court and it is pending before the U.S. Fifth Circuit Court of Appeals.
[7] R. Doc. No. 1, p. 4.
[8] *Id*. at pp. 4-5.

knowledge of CEF's claim to the settlement proceeds; (3) Sher Garner had possession of the settlement proceeds; and (4) Sher Garner disbursed the settlement proceeds.

*LAW AND ANALYSIS*

I.   STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not

rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**II.  ANALYSIS**

a.  Vicarious Liability

CEF does not dispute Sher Garner's assertion that the relevant sections of Louisiana Rule of Professional Conduct 1.15 address the conduct of lawyers and not law firms. Instead, CEF claims that Sher Garner is liable for the actions of its attorneys under the doctrine of *respondeat superior*. Sher Garner counters that "[t]he only named defendant in this action is the Sher Garner law firm, and no allegation of *respondeat superior* liability has been pled."[9] Sher Garner argues that since vicarious liability was not expressly pled, summary judgment in its favor is appropriate because a plaintiff is not entitled to recover on an unpleaded claim.[10] *See e.g.*, *Keller Williams Realty S.W. v. Chrysler First Bus. Credit Corp.*, 2001 WL 43557 (5th Cir. Jan. 9, 2001); *Cutrera v. Board of Supervisors of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

---

[9] R. Doc. No. 101-1, p.5. The complaint alleges:
> CAUSE OF ACTION
> 13.
> Sher Garner owed a duty to CEF to retain possession of and safeguard the Settlement Proceeds, and to not disburse the Settlement Proceeds without the prior consent of CEF. Alternatively, Sher Garner could have deposited the Settlement Proceeds into the registry of the court. Sher Garner's disbursement of the Settlement Proceeds without the consent of CEF violated Sher Garner's duties to CEF. Accordingly, Sher Garner is liable to CEF in the amount of the Settlement Proceeds disbursed by Sher Garner without the consent of CEF.

R. Doc. No. 1, p.5.

[10] Sher Garner does not dispute that a law firm can be held vicariously liable for the torts of its employees. *See* R. Doc. No. 119, p.17.

As the Fifth Circuit has explained:

> The notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision. Rule 8 provides that "[a] pleading ... shall contain … a short and plain statement of the claim showing that the pleader is entitled to relief…." The function of a complaint is to give the defendant fair notice of the plaintiff's claim and the grounds upon which the plaintiff relies. The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim.

*St. Paul Mercury Ins. Co., v. Williamson*, 224 F.3d 425, 434 (5th Cir. 2000) (citations and quotation marks omitted). In *Williamson*, the Fifth Circuit concluded that "[a]lthough [plaintiff's] allegations did not specifically include the words 'malicious prosecution,' such a claim could conceivably come within those allegations, and those allegations state facts upon which relief can be granted." *Id.* at 435.

The Court finds that the factual allegations contained in the complaint are sufficient to satisfy the liberal pleading standard of Federal Rule of Civil Procedure 8. It is true that CEF's complaint makes no mention of any of Sher Garner's employees and it does not mention the terms "vicarious liability" or "*respondeat superior*," but the Court finds that such claim could conceivably come within CEF's allegations. *See Rebstock v. Evans Prod. Eng'g Co., Inc.*, 2009 WL 3401262, *10-11 (E.D. Mo., Oct. 20, 2009); *Munoz v. Livergood*, 1996 WL 327992, *2 (N.D. Ill., June 12, 1996).

As the only defendant named,[11] Sher Garner was provided with fair notice that CEF was alleging a theory of *respondeat superior* because liability for allegations such as the "disbursement of the Settlement Proceeds without the consent of CEF" could not have been

---

[11] The Fifth Circuit has recognized that Louisiana law allows a plaintiff to bring suit against an employer even when the employer's sole basis for liability is vicarious liability. *Stanley ex rel. Estate of Hale v. Trinchard*, 579 F.3d 515, 520 (5th Cir. 2009).

ascribed to Sher Garner but for the actions of its employees. Accordingly, despite CEF's failure to categorize the legal theory giving rise to its claims, CEF has alleged facts upon which relief can be granted and that CEF satisfied its pleading burden.

    b.  Conversion

Sher Garner also asserts that summary judgment in its favor is appropriate with respect to plaintiff's conversion claim. Sher Garner argues that CEF has not properly pled a conversion claim and, therefore, it should be prohibited from proceeding pursuant to such a cause of action. The Louisiana Supreme Court has explained:

> A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. It is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from his act.

*Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 760 (La. 1985).

For the same reasons set forth above, the Court finds that a claim for conversion comes within CEF's allegations that it had an interest in the settlement proceeds and that Sher Garner disbursed those proceeds without its consent. Accordingly, the Court concludes that CEF has alleged facts upon which relief can be granted and satisfied its pleading burden.

    c.  Rights Protected by Rule 1.15

The next issue before the Court is whether CEF's interest in the settlement proceeds was of the type protected by Rule 1.15 of the Louisiana Rules of Professional Conduct. Rule 1.15 governs a lawyer's duties with regard to safekeeping the property of clients or third persons in the lawyer's possession. Rule 1.15(d) states:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the

6

>client or third person. For purposes of this rule, the third person's interest shall be one of which the lawyer has actual knowledge, and shall be limited to a statutory lien or privilege, a final judgment addressing disposition of those funds or property, or a written agreement by the client or the lawyer on behalf of the client guaranteeing payment out of those funds or property. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

If there are conflicting claims on that interest, section (e) applies:

>When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

Rule 1.15(d) places limitations on what constitutes a third-party interest. Sher Garner argues that CEF does not possess any of the interests identified as subject to protection: (1) a statutory lien or privilege; (2) a final judgment addressing disposition of the funds or property; or (3) a written agreement by the client or the lawyer on behalf of the client guaranteeing payment out of those funds or property. However, the Multiple Indebtedness Mortgage, Security Agreement, and Assignment of Leases and Rents (the "mortgage") explicitly provides, "[a]ll insurance proceeds paid or payable in connection with any Loss shall be paid to [CEF]."[12] This provision promises payment of any insurance proceeds to CEF and, therefore, falls within the meaning of a written agreement by the client guaranteeing payment out of the funds.

Arguing that the mortgage did not guarantee payment, Sher Garner points to language in the Security Agreement, another contract between CEF and the Trusts executed on the same

---

[12] R. Doc. No. 104-3, p.20. Two different entities executed the original mortgage, but CEF is the successor-in-interest of the mortgagee and the Huey & Fong Trust and The Kenneth Huey Family Trust (the "Trusts") assumed the obligations of the mortgagor. *See* R. Doc. No. 104-3, p.2; R. Doc. No. 104-4, p.62.

date, which provides that, "[u]ntil default Debtor may have possession of the Collateral and use it in any lawful manner, and upon default Secured Party shall have the immediate right to the possession of the Collateral."[13] However, the fact that the Trusts may have been able to maintain control over the Collateral until placed in default does not change the fact that there existed a written agreement by the client guaranteeing payment out of those funds, thereby permitting CEF's interest in the settlement proceeds to fall within the definition of third-party interest set forth in Rule 1.15.[14]

    d. <u>Stricken Language</u>

As mentioned above, the mortgage provided that "[a]ll insurance proceeds paid or payable in connection with any Loss shall be paid to Mortgagee." On November 2, 2007, the Trusts and CEF executed the Second Forbearance which includes a provision stating, "[b]orrower hereby agrees that all insurance proceeds payable with respect to the Property from and after the date hereof shall be paid directly to Lender and applied by Lender to the payment of Borrower's obligations under the Loan Documents."[15] The provision has a handwritten line drawn through it as well as handwritten initials beside it. The parties do not dispute that it was the intent of the parties to strike the provision. Rather, the parties dispute the implications of striking the provision.

Louisiana law provides that where the terms of a contract are "clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046 (2008). "The contract's meaning and the intent of its parties

---

[13] R. Doc. No. 119-5, p.2. The "Collateral" referenced in the Security Agreement is defined to include insurance proceeds. *See id.* at p.7.
[14] Because the Court finds that CEF's interest falls within the definition of third-party interest set forth in Rule 1.15(d), the Court need not address CEF's alternative argument that the definition of "interest," as used in Rule 1.15(e), is different from that of Rule 1.15(d).
[15] R. Doc. No. 104-5, p.3.

8

must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence, such that, if a court finds the contract to be unambiguous, it may construe the intent from the face of the document-without considering extrinsic evidence-and enter judgment as a matter of law." *Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co.*, 622 F.3d 384, 392 (5th Cir. 2010) (quotation marks omitted). "Importantly, Louisiana law does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties." *Shocklee v. Massachusetts Mut. Life Ins. Co.*, 369 F.3d 437, 440 (5th Cir. 2004) (quotation marks omitted).

Sher Garner asserts that the striking of the provision establishes that any insurance funds received by the Trusts from and after the date of the Second Forbearance would not be paid directly to CEF and, further, that CEF waived its interest in those funds. Essentially, Sher Garner argues that the striking of the provision constitutes not only an elimination of language unwanted by both parties in that contract, but also an additional affirmative waiver of a right granted to CEF in a separate contract.

The Court disagrees with Sher Garner's interpretation. Viewing the stricken provision within the four corners of the document, it is evident that the parties intended only to eliminate the provision from the Second Forbearance. There is no indication that in excising the provision, the parties intended to strip CEF of the right to any insurance proceeds granted by another agreement. Accordingly, the Court must exclude the stricken provision, as the parties intended, and interpret the remainder of the Second Forbearance as if the parties had never included the provision.[16] *See e.g.*, 4 Am. Jur. 2d Alteration of Instruments § 30 (2010) ("The drawing of lines

---

[16] Since the striking of the provision is unambiguous, the Court does not consider the parties' reasons for the provision's elimination as such reasons would constitute inadmissible parol evidence. *See Avatar Exploration, Inc.*

through or across the words in an instrument, if intentionally done, constitutes an erasure or cancellation of such words under the rules relating to the alteration of instruments."). Since the parties already had an existing contractual agreement entitling CEF to any insurance proceeds, the Court is not permitted to create a new contractual provision relieving CEF of that entitlement.

In support of its argument, Sher Garner relies on *Mirandona v. Aaxico Airlines, Inc.*, 143 So.2d 805 (La. Ct. App. 1962). However, the court's holding in *Mirandona* is, in fact, consistent with the Court's conclusion in this case. In *Mirandona*, the parties agreed to line-out a provision in an insurance contract that would have provided coverage for shipment losses during carriage by air. *Id.* at 806-7. Plaintiffs argued that the affirmative requirement to provide coverage for carriage by air still existed despite the line-out because a reference to "aircraft" and a provision for insurance against "all risks" remained. *Id.* at 807. The *Mirandona* court held that the reference to "aircraft" was merely an oversight and by striking out the entire air coverage clause, the parties intended to eliminate the affirmative requirement to provide coverage for carriage by air. *Id.* Consistent with basic contract interpretation principles and the approach of this Court, the *Mirandona* court interpreted the contract as if the parties had never included the provision.

    e.  <u>Liability Pursuant to Rule 1.15(e)</u>

CEF further moves for partial summary judgment, seeking a determination that as a matter of law: (1) CEF had a contractual claim to and a security interest in the settlement proceeds; (2) Sher Garner knew of CEF's claimed interest; (3) Sher Garner "received funds" or was "in possession" of the settlement proceeds as those terms are used in Rule 1.15; and (4) Sher

---

*v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991) ("Parol evidence is admissible to clarify the intent of the parties only if the language of the contract is ambiguous."). However, the Court notes that the language stricken from the Second Forbearance is more restrictive than the original language of the mortgage: the stricken language limits the use of the proceeds only to payment of the loan obligations. The fact that the provisions are not identical further prevents the Court from concluding that the parties intended the striking of the Second Forbearance provision to affect the rights granted in the mortgage provision.

Garner disbursed the settlement proceeds before the "dispute" concerning the proceeds had been resolved.  The Court addresses each of these issues in turn.  However, the Court also notes that contrary to CEF's assertion,[17] a finding in favor of CEF on each of these issues does not entitle CEF to an entry of judgment as to liability.  CEF is still required to prove that it did not consent to the disbursement.

        *i.   Contractual Claim to and Security Interest in Settlement Proceeds*

Sher Garner does not dispute that the mortgage granted CEF an interest in the settlement proceeds.  Instead, Sher Garner asserts that CEF waived its interest.  First, Sher Garner points to a provision of the Security Agreement, which states that "[u]ntil default Debtor may have possession of the Collateral and use it in any lawful manner, and upon default Secured Party shall have the immediate right to the possession of the Collateral."[18]  Sher Garner argues that since CEF did not place the Trusts in default until February 6, 2009, the Trusts properly had control over the settlement proceeds at the time they were disbursed.  However, Sher Garner's argument fails to account for the provision of the Security Agreement immediately following the cited provision.  The next provision states that, "Debtor shall be in default under this Security Agreement upon the happening of any of the following events (an "Event of Default"):…(c) loss, theft, damage or destruction to or of any of the Collateral which shall materially and substantially diminish the aggregate value of the Collateral…."[19]  Therefore, when the Collateral was damaged by Hurricane Katrina,[20] the Trusts no longer had the right to "possession of the Collateral and [to] use it in any lawful manner."

---

[17] R. Doc. No. 107 ("If the Court also grants these concurrent motions, then all elements of Sher Garner's liability have been conclusively established as a matter of law, and CEF moves for entry of partial summary judgment in favor of CEF on the issue of liability.").

[18] R. Doc. No. 119-5, p.2.

[19] *Id.*

[20] The parties do not dispute that Hurricane Katrina damaged the Chalmette property, the property underlying the mortgage.

Second, Sher Garner renews its argument that in striking the provision instructing that all insurance proceeds be paid directly to CEF from the Second Forbearance, CEF waived its interest in those funds. For the reasons set forth earlier in this order, this argument is unavailing.

Third, Sher Garner argues that genuine issues of material fact exist as to whether CEF waived its rights to insurance proceeds based on the testimony of several Sher Garner employees who state that they believed there was a waiver in the Second Forbearance. Even if these parties had personal knowledge of the negotiations leading up to execution of the Second Forbearance,[21] such testimony regarding unambiguous contract provisions constitutes inadmissible parol evidence. *See Avatar Exploration*, 933 F.2d at 320 ("Parol evidence is admissible to clarify the intent of the parties only if the language of the contract is ambiguous.").[22]

Since CEF did not waive its interest in the settlement proceeds granted by the mortgage and Security Agreement, the Court finds that no genuine issues of material fact remain as to whether CEF had a contractual claim to and a security interest in the settlement proceeds.[23]

### ii. Actual Knowledge of the Claimed Interest

Sher Garner does not contest that the communications of Martha Curtis ("Curtis"), an attorney working at Sher Garner, demonstrate knowledge of CEF's claim to the settlement proceeds. Following a meeting with representatives from CEF, Curtis wrote an e-mail to her clients and colleagues stating: "[w]e need to be careful because [CEF], through Barbara Atkinson and its attorney Dan Plunkett, have indicated to us yesterday afternoon that [CEF] believes all

---

[21] No evidence has been provided to show that this is the case.

[22] To the extent that Sher Garner argues that CEF failed to object to the payment of Sher Garner's fees out of the settlement proceeds, failed to review initial invoices, failed to take immediate action securing the funds received by the Trusts and permitted the purchase of the Beaumont property, the proffered arguments are relevant to whether CEF consented to the disbursements, not to whether CEF had waived its contractual interest in the settlement proceeds.

[23] In its opposition, Sher Garner argues for the first time that CEF's claims are prescribed pursuant to Louisiana Civil Code article 3492. However, since such argument is unresponsive to CEF's motion for summary judgment and Sher Garner has not moved for summary judgment on this issue, the Court will not address it.

insurance proceeds for property damage is [CEF's] money under the mortgage."[24]  In a reply sent to all the Sher Garner attorneys listed on the original e-mail, the Trusts responded, "[y]es, it is our impression too that all of the funds from the insurance companies must be routed to [CEF] since they are in a superior position in accordance to the note.  That is why we have not touched any of the new settlement funds as of yet."[25]  James Garner ("Garner"), another Sher Garner attorney, responded to all with, "[w]e disagree with them of course."[26]

Instead, Sher Garner argues that it did not have actual knowledge of CEF's claim because it never received a written demand for the proceeds prior to February, 2009.  However, there is no statutory or contractual requirement that Sher Garner be notified in writing of CEF's interest in the settlement proceeds.  Rather, Rule 1.15 only provides that, "the third person's interest shall be one of which the lawyer has actual knowledge."  Here the evidence unequivocally shows not only that the attorneys of Sher Garner had actual knowledge of CEF's claimed interest, but also that Sher Garner recognized that there was a live dispute regarding who was due the proceeds.

Accordingly, the Court finds that no genuine issues of material fact remain with respect to whether Sher Garner had actual knowledge of CEF's claimed interest.

### iii. Possession of Settlement Proceeds

Sher Garner does not dispute that the settlement proceeds were deposited into a trust account with First Bank and Trust ("FBT") entitled "Huey Fong Litigation Fees Account – c/o Tessa Huey c/o Marie Moore – Sher Garner Law Firm" (the "FBT account").[27]  Sher Garner also does not dispute that Marie Moore ("Moore") and Garner, both Sher Garner employees, were the

---

[24] R. Doc. No. 109-9, p.3.
[25] *Id.*
[26] *Id.*
[27] R. Doc. No. 120, p.15.

only signatories on the account.[28] In her deposition, Moore confirmed that FBT required either Moore or Garner to authorize any withdrawals from the account.[29]

Sher Garner points to deposition testimony from Quintessa Huey, in which she indicates that she authorized a transfer of $720,000 out of the FBT account. Sher Garner argues that this testimony indicates that Quintessa Huey withdrew funds from the FBT account without any authorization by Sher Garner. However, Sher Garner reads far too much into the words of Quintessa Huey's testimony. She only states that she authorized the transfers, not that she executed the transfers herself. In fact, a September 29, 2008 e-mail from Quintessa Huey instructing Sher Garner to transfer $720,000 out of the FBT account belies Sher Garner's interpretation of her testimony.[30]

Ultimately, the issue of whether Quintessa Huey was able to bypass the standard withdrawal protocol on one occasion in 2008 does not negate the fact that the settlement funds were in a trust account on which two Sher Garner employees were the only signatories. Accordingly, the Court finds that no genuine issues of material fact remain with respect to whether Sher Garner "received funds" or was "in possession" of the settlement proceeds as those terms are used in Rule 1.15.

### iv. Disbursement of Settlement Proceeds

Finally, CEF asserts that Sher Garner disbursed the settlement proceeds before the dispute concerning the proceeds had been resolved. Sher Garner does not contest that the dispute concerning the proceeds had not been resolved and that they disbursed at least some of the

---

[28] *Id.*
[29] R. Doc. No. 109-6, p.30.
[30] R. Doc. No. 109-9, pp. 15-16.

settlement proceeds.[31]  For example, Sher Garner admits that it paid itself approximately $200,000 from the FBT account after CEF filed a lawsuit seeking collection of the settlement proceeds.[32]  Accordingly, the Court finds that no genuine issues of material fact remain as to whether Sher Garner disbursed funds before the dispute concerning the proceeds had been resolved.

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion[33] for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion[34] for partial summary judgment with respect to the Second Forbearance is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion[35] for partial summary judgment with respect to defendant's potential conversion and *respondeat superior* liability is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion[36] for partial summary judgment with respect to plaintiff's claim to, and defendants' knowledge, possession and disbursement of, the settlement proceeds is **GRANTED IN PART** in that: (1) CEF had a contractual claim to and a security interest in the settlement proceeds; (2) Sher Garner knew of CEF's claimed interest; (3) Sher Garner "received funds" or was "in possession" of the settlement proceeds as those terms are used in Rule 1.15; and (4) Sher Garner disbursed the settlement proceeds before the

---

[31] While the issue of whether Tessa Huey was able to withdraw funds without the authorization of Sher Garner is irrelevant to whether Sher Garner was in possession of the settlement proceeds, it is relevant when determining to what extent Sher Garner disbursed the proceeds.  However, such determination concerns the extent of Sher Garner's damages liability and not whether Sher Garner disbursed portions of the proceeds before the dispute concerning the proceeds had been resolved.
[32] R. Doc. No. 109-2, p.5; R. Doc. No. 120-24, p.6.
[33] R. Doc No. 101.
[34] R. Doc. No. 104.
[35] R. Doc. No. 107.
[36] R. Doc. No. 109.

"dispute" concerning the proceeds had been resolved. However, the motion is **DENIED IN PART** in that plaintiff is not entitled to complete summary judgment as to liability.

New Orleans, Louisiana, April 7, 2011.

                                                **LANCE M. AFRICK**
                                      **UNITED STATES DISTRICT JUDGE**